# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# Houston Division

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WOODBOLT DISTRIBUTION, LLC, also known as Cellucor; F.H.G. CORPORATION, d/b/a Integrity Nutraceuticals; VITAQUEST INTERNATIONAL, INC., d/b/a Garden State Nutritionals,<br><br>Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Natural Alternatives International, Inc. ("NAI"), for its complaint against defendants, Woodbolt Distribution, LLC, also known as Cellucor ("Woodbolt"), F.H.G. Corporation, d/b/a Integrity Nutraceuticals ("FHG"), and Vitaquest International, Inc., d/b/a Garden State Nutritionals ("Vitaquest"), alleges as follows:

## PARTIES

1. NAI is a Delaware corporation with its principal place of business in San Marcos, California.

2. Woodbolt is a Texas limited liability corporation with its principal place of business located at 715 N. Main St., Bryan, Texas. Its products and services are offered to and may be purchased and/or used by citizens of Texas. Woodbolt owns, maintains and/or operates a website at www.cellucor.com, the content of which is incorporated herein by reference.

3. FHG is a Florida corporation with its principal place of business at 3005 Parkfield Loop South, Spring Hill, Tennessee. Its products and services are offered to and may be purchased and/or used by citizens of Texas, including Woodbolt.

4. Vitaquest is a New Jersey corporation with its principal place of business at 8 Henderson Drive, West Caldwell, New Jersey. Its products and services are offered to and may be purchased and/or used by citizens of Texas, including Woodbolt.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising from Title 35 of the United States Code, 35 U.S.C. §§ 1 *et seq*.

6. Exclusive jurisdiction over this matter is conferred upon the Court pursuant to 28 U.S.C. §§ 1331, 1338.

7. The exercise of personal jurisdiction over the defendant comports with the laws of this State and the constitutional requirements of due process because the defendants transact business and/or offer to transact business within this State.

8. Venue is proper in this District under 28 U.S.C. §§ 1391, 1400(b).

## FACTS

**NAI**

9. NAI is a leading formulator, manufacturer and marketer of nutritional supplements and provides strategic partnering services to its customers. NAI is a publicly traded company.

10. NAI's comprehensive partnership approach offers a wide range of innovative nutritional products and services to their clients including: scientific research, clinical studies, proprietary ingredients, customer-specific nutritional product formulation, product testing and

evaluation, marketing management and support, packaging and delivery system design, regulatory review and international product registration assistance.

11.     NAI scientifically designs and customizes nutritional products based on the unique needs of individual clients.  New products and formulas are researched and tested prior to full-scale production.  NAI routinely produces pilot or sample runs of product formulation prototypes to ensure stability and/or efficacy and to determine ingredient interaction and prospective customer acceptance of the final product.  NAI also directs and participates in clinical research studies to establish consumer benefits and scientific efficacy supporting both product claims and marketing initiatives.

12.     NAI certifies that each raw material used meets or exceeds the requirements of the U.S. Food and Drug Administration (FDA), the U.S. Pharmacopoeia (USP) and the Therapeutic Goods Administration of Australia (TGA).  Raw materials are also tested to ensure that they are free of harmful pesticides and herbicides and are compliant with state and federal requirements for heavy metal concentration.  All of these tests are done by NAI to be in compliance with 21 CFR Part 111 requirements.

13.     NAI's marketing and product development experts are accomplished in the areas of market research, supplement design, manufacturing, packaging, distribution, international product registration and regulatory compliance. NAI provides in-house graphic design capabilities and works with clients to create label designs, brochures, videos and other promotional tools to appropriately market its products.  The combination of these components is part of a cohesive strategy designed to increase mass-market consciousness, boost brand awareness among the health-conscious consumers and facilitate expansion into new markets and channels of distribution.

14. NAI's success in the formulation, development, manufacturing and marketing of specialized products is predicated on its dedication to research and development, technology, science and state-of-the-art manufacturing. The comprehensive services NAI offers have established NAI as an innovator in the field of nutritional science.

15. NAI is the owner by assignment of U.S. Patent No. 8,067,381 ("the '381 patent"), issued on or about November 29, 2011 and entitled "Methods and compositions for increasing the anaerobic working capacity in tissues".  A true and correct copy of the '381 patent is attached as Exhibit 1 and incorporated by reference.

16. NAI owns other United States patents and foreign equivalents related to beta-alanine.  NAI also owns the entire right, title and interest to the CarnoSyn® trademark, Serial No. 78372235 and Registration No. 3146289.

17. NAI licenses its beta-alanine patents to Compound Solutions, Inc. ("CSI"). CSI is a global importer and supplier of raw ingredients to contract manufacturers, formulators and distributors in the nutritional supplement, food, beverage, cosmetic and pharmaceutical industries.  CSI imports and sells beta-alanine to companies that include the beta-alanine in products for the nutritional supplement market.  CSI distributes beta-alanine in the United States. NAI derives its revenue in part from royalty payments made by CSI, where the royalty payments are directly tied to CSI sales of beta-alanine.

**Defendants**

18. Woodbolt is a supplier of sports nutrition supplements, including supplements containing beta-alanine.  Woodbolt provides instructions related to the use of sports nutrition supplements, including instructions related to the use and consumption of products containing beta-alanine.

19. FHG and Vitaquest both engage in the formulation, development, and manufacture of dietary supplements. Among other things, the companies provide contract manufacturing services for dietary supplements in the United States.

20. FHG has a website promoting its business, www.integritynut.com. FHG represents that it "stocks a broad array of ingredients including amino acids, creating, glucose support, joint and health care, sports nutrition and specialty items." The website specifically advertises beta-alanine as one of its products that provides "Performance Support." http://www.integritynut.com/products-and-services/category/amino_acids.

21. Vitaquest has a website promoting its business, www.gardenstatenutritionals.com, which is redirected to http://supplementmanufacturers.info/about-vitaquest. The company represents that "Vitaquest is one of the largest custom contract manufacturers of nutritional supplements in the United States." http://supplementmanufacturers.info/nutritional-supplement-manufacturer-2.

22. Woodbolt manufactures, uses, offers for sale and sells products that contain beta-alanine, including without limitation, C4 Extreme, M5 Extreme, and N-Zero Extreme.

23. Woodbolt's packaging labels represent to the public that these products contain beta-alanine.

24. Woodbolt's own website represents that these products contain beta-alanine, which it describes as:

> Beta Alanine is a naturally occurring amino acid. Beta Alanine produces higher intramuscular carnosine levels which amplifies energy levels, supports muscular endurance, and improves performance. Beta Alanine is an effective fatigue arrester— it acts as a buffer, preventing lactic acid accumulation in skeletal muscle (which occurs during exercise) allowing the body to perform better, longer.

*See, e.g.*, http://cellucor.com/product/c4-extreme.

25. On or about September 2, 2011, Woodbolt posted the following on its blog (blog.cellucor.com) with respect to its C4 Extreme product, which confirms the importance to the company of products that contain beta-alanine:

> 2011 has been the 'Year of C4.' Since its official launch this past January, C4 Extreme has exploded onto the sports nutrition scene, converting countless fans and receiving numerous honors, including nominations for the prestigious Pre-Workout Supplement of the Year and Muscle Building Supplement of the Year awards from Bodybuilding.com.
>
> This fall, we're excited to unveil two delicious new flavors, Pink Lemonade and Icy Blue Razz. We've also updated and upgraded C4 Extreme's formula, bolstering the already explosive mix—shining reviews of C4 Extreme Version 2.1 are already popping up all over the web.
>
> C4 Extreme Version 2.1 comes at the heels of a challenging summer season. C4's popularity and demand sky rocketed during an industry-wide shortage of Beta Alanine that slowed production across the entire industry. We're elated to say that we've overcome this challenge, and proudly announce that C4 Version 2.1 is available now in Fruit Punch and Orange—Pink Lemonade and Icy Blue Razz drop early this fall.

26. Woodbolt's products are advertised and marketed to the public and such products may be purchased in retail stores, on Woodbolt's website or by telephone, and from third-party websites (such as www.bodybuilding.com).

27. As a contract manufacturer, FHG has manufactured dietary supplements containing beta-alanine for companies in the United States, including Woodbolt.

28. As a contract manufacturer, Vitaquest has manufactured dietary supplements containing beta-alanine for companies in the United States, including Woodbolt.

29. Public records show that in 2010 and 2011, FHG imported beta-alanine into the United States.

30. Defendants make, import, use, offer for sale and sell products that fall within the scope of one or more claims of the '381 patent. In addition, defendants contribute to and induce others to infringe one or more claims of the '381 patent.

31. Defendants are not licensed or authorized to use NAI's intellectual property (including the '381 patent) for all of the products they sell or methods they teach.

32. On November, 30, 2011, NAI gave actual notice to Woodbolt of the issuance of the '381 patent.

33. On December 6, 2011, NAI's sent a cease and desist letter to Woodbolt. Woodbolt has not complied.

34. The documents referred to herein are incorporated herein by reference.

## COUNT I
### (Patent Infringement -- Woodbolt)

35. The foregoing allegations of this complaint are incorporated by reference.

36. Woodbolt has made, used, sold, offered for sale and/or imported products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '381 patent, and will continue to do so unless enjoined therefrom.

37. Woodbolt has contributed to the use, sale and/or offer for sale by others of its infringing products, methods and services.

38. Woodbolt has induced the use, sale and/or offer for sale by others of its infringing products, methods and services.

39. Woodbolt's infringement has been willful.

40. Plaintiffs have been irreparably harmed by Woodbolt's acts of infringement and have suffered damages in an amount to be determined at trial.

## COUNT II
### (Patent Infringement -- FHG)

41. The foregoing allegations of this complaint are incorporated by reference.

42. FHG has made, used, sold, offered for sale and/or imported products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '381 patent, and will continue to do so unless enjoined therefrom.

43. FHG has contributed to the use, sale and/or offer for sale by others of its infringing products, methods and services.

44. FHG has induced the use, sale and/or offer for sale by others of its infringing products, methods and services.

45. FHG's infringement has been willful.

46. Plaintiffs have been irreparably harmed by FHG's acts of infringement and have suffered damages in an amount to be determined at trial.

## COUNT III
### (Patent Infringement -- Vitaquest)

47. The foregoing allegations of this complaint are incorporated by reference.

48. Vitaquest has made, used, sold, offered for sale and/or imported products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '381 patent, and will continue to do so unless enjoined therefrom.

49. Vitaquest has contributed to the use, sale and/or offer for sale by others of its infringing products, methods and services.

50. Vitaquest has induced the use, sale and/or offer for sale by others of its infringing products, methods and services.

51. Vitaquest's infringement has been willful.

52. Plaintiffs have been irreparably harmed by Vitaquest's acts of infringement and have suffered damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

NAI respectfully requests that this Court enter judgment against defendants and that the following relief be granted:

a. judgment that defendants have infringed claims of the '381 patent (35 U.S.C. § 271);

b. judgment that defendants' infringement of claims of the '381 patent was willful;

f. preliminary and permanent injunction against continued infringement (35 U.S.C. § 283);

g. damages for past infringement (35 U.S.C. § 284);

h. increased and trebled damages for willful infringement (35 U.S.C. § 284);

i. imposition of a constructive trust on all proceeds from the sale of accused products;

q. attorneys' fees as allowed by law, including without limitation, 35 U.S.C. § 285;

r. costs pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law; and

s. such other relief as the Court deems just and appropriate under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated:  December 21, 2011             Respectfully submitted,

/s/ Richard J. Oparil
Richard J. Oparil
S.D. Texas Bar No. 30422
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC  20037
(202) 457-6000
(202) 457-6315 (fax)
roparil@pattonboggs.com

Attorneys for Plaintiff
Natural Alternatives International, Inc.

Of Counsel:

Scott Chambers, Ph.D.
Kevin M. Bell
PATTON BOGGS LLP
8484 Westpark Drive, Ninth Floor
McLean, Virginia 22102
(703) 744-8000

Caroline Cook Maxwell
PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, TX 75201
(214) 758-1500