**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 4:11-cv-04511 |
| ) | |
| v. ) | |
| ) | |
| WOODBOLT DISTRIBUTION, LLC, ) | |
| also known as Cellucor; ) | |
| F.H.G. CORPORATION, ) | |
| d/b/a Integrity Nutraceuticals; ) | |
| VITAQUEST INTERNATIONAL, INC., ) | |
| d/b/a Garden State Nutritionals, ) | |
| ) | |
| Defendants. ) | |

## ANSWER TO COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NO. 8,067,381 AND COUNTERCLAIMS

Defendant Woodbolt Distribution, LLC, also known as Cellucor ("Woodbolt"), answers the

Complaint of Plaintiff Natural Alternatives International, Inc. ("NAI") for infringement of U.S.

Patent No. 8,067,381 (" '381 Patent"), and asserts counterclaims as follows.

### THE PARTIES

1. In response to paragraph 1 of the Complaint, Woodbolt is without information sufficient

to form a belief to the allegations, and accordingly denies same.

2. In response to paragraph 2 of the Complaint, admitted that Woodbolt is a Texas limited

liability company with its principal place of business located at 715 N. Main Street, Bryan, Texas

77802, that its products are offered to and may be purchased and/or used by citizens of Texas, and

that it owns, maintains and/or operates a website at www.cellucor.com. Woodbolt denies the

remainder and objects to the incorporation into the Complaint of the content of Woodbolt's website.

3. In response to paragraph 3 of the Complaint, Woodbolt is without information sufficient to form a belief as to FHG and accordingly denies same.

4. In response to paragraph 4 of the Complaint, Woodbolt is without information sufficient to form a belief as to Vitaquest and accordingly denies same.

## JURISDICTION AND VENUE

5. In response to paragraph 5 of the Complaint, admitted that the action purports to be an action for patent infringement.

6. In response to paragraph 6 of the Complaint, admitted.

7. In response to paragraph 7 of the Complaint, admitted.

8. In response to paragraph 8 of the Complaint, admitted.

## FACTS

### NAI

9. In response to paragraph 9 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

10. In response to paragraph 10 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

11. In response to paragraph 11 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

12. In response to paragraph 12 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

13. In response to paragraph 13 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

14. In response to paragraph 14 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

15. In response to paragraph 15 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same, except that Woodbolt admits that a true and correct copy of the '381 patent is attached as Exhibit 1 to the Complaint.

16. In response to paragraph 16 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

17. In response to paragraph 17 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

**Defendants**

18. In response to paragraph 18 of the Complaint, admitted.

19. In response to paragraph 19 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

20. In response to paragraph 20 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

21. In response to paragraph 21 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

22. In response to paragraph 22 of the Complaint, admitted only that Woodbolt offers for sale and sells products that contain beta-alanine, including C4 Extreme, M5 Extreme and N-Zero Extreme, and contracts with third parties to manufacture products that contain beta-alanine, including C4 Extreme, M5 Extreme and N-Zero Extreme, and otherwise denied.

23. In response to paragraph 23 of the Complaint, admitted.

24. In response to paragraph 24 of the Complaint, admitted.

25. In response to paragraph 25 of the Complaint, admitted.

26. In response to paragraph 26 of the Complaint, admitted.

27. In response to paragraph 27 of the Complaint, admitted only that FHG has manufactured dietary supplements for Woodbolt.  As to the remaining allegations, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

28. In response to paragraph 28 of the Complaint, admitted only that FHG has manufactured dietary supplements for Woodbolt.  As to the remaining allegations, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

29. In response to paragraph 29 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

30. In response to paragraph 30 of the Complaint, denied as to Woodbolt. As to defendants FHG and Vitaquest, Woodbolt is without knowledge sufficient to form a belief, and accordingly denies same.

31. In response to paragraph 31 of the Complaint, admitted that Woodbolt is not licensed under the '381 Patent, but denies that the '381 Patent is intellectual property of NAI, because the '381 Patent claims subject matter which was already in the public domain, and is thus invalid.

32. In response to paragraph 32 of the Complaint, admitted.

33. In response to paragraph 33 of the Complaint, admitted.

34. In response to paragraph 34 of the Complaint, Woodbolt believes that no response is required.

## COUNT I

### (Patent Infringement – Woodbolt)

35. In response to paragraph 35 of the Complaint, Woodbolt incorporates by reference its foregoing responses to the complaint's allegations.

36. In response to paragraph 36 of the Complaint, denied.

37. In response to paragraph 37 of the Complaint, denied.

38. In response to paragraph 38 of the Complaint, denied.

39. In response to paragraph 39 of the Complaint, denied.

40. In response to paragraph 40 of the Complaint, denied.

<u>**COUNT II**</u>

**(Patent Infringement – FHG)**

41. In response to paragraph 41 of the Complaint, Woodbolt incorporates by reference its foregoing responses to the Complaint's allegations.

42. In response to paragraph 42 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

43. In response to paragraph 43 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

44. In response to paragraph 44 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

45. In response to paragraph 45 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

46. In response to paragraph 46 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

<u>**COUNT II**</u>

**(Patent Infringement – Vitaquest)**

47. In response to paragraph 47 of the Complaint, Woodbolt incorporates by reference its foregoing responses to the Complaint's allegations.

48. In response to paragraph 48 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

49. In response to paragraph 49 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

50. In response to paragraph 50 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

51. In response to paragraph 51 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

52. In response to paragraph 52 of the Complaint, Woodbolt is without information sufficient to form a belief, and accordingly denies same.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

53.      The Complaint fails to state facts sufficient to constitute a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

54.      Woodbolt has not infringed the '381 Patent either literally or under the doctrine of equivalents, and has not contributed, or actively induced others, to infringe the '381 Patent.

## THIRD AFFIRMATIVE DEFENSE

55.      The '381 Patent is invalid for failure to comply with 35 U.S.C. §§ 101, 102, 103, and/or 112.

## FOURTH AFFIRMATIVE DEFENSE

56.     After receiving notice of the '381 Patent, Woodbolt has acted in good faith belief that the '381 Patent is invalid, unenforceable and not infringed.

## FIFTH AFFIRMATIVE DEFENSE

57.     The '381 Patent is unenforceable due to NAI's inequitable conduct before the United States Patent and Trademark Office ("USPTO") as more specifically alleged in paragraphs 12-51, 83-85 and 99 of Woodbolt's counterclaims below.

## COUNTERCLAIMS

1.     This is an action for declaratory judgment of non-infringement, invalidity and unenforceability of U.S. Patent No. 8,067,381 ("'381 Patent") and U.S. Patent No. 8,129,422 ("'422 Patent") pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the United States Patent Law, 35 U.S.C. § 100 *et seq.* This is also an action for willful violation of the Sherman Act Antitrust Laws, 15 U.S.C. § 2, and for unfair competition due to NAI's assertion of infringement of the '381 Patent and '422 Patent in bad faith knowing that the '381 Patent and '422 Patent are invalid, and unenforceable because they were procured through NAI's inequitable conduct.

## THE PARTIES

2.     Woodbolt is a corporation organized and existing under the laws of the State of Texas with its principal place of business located at 715 N. Main Street, Bryan, TX 77803-3327. Woodbolt manufactures and sells nutritional food supplements, including supplements containing beta-alanine, a common and naturally occurring amino acid.

3.     On information and belief, Defendant NAI is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1185 Linda

Vista Drive, San Marcos, California 92078. On information and belief, NAI owns by assignment the '381 Patent and the '422 Patent. NAI sells, *inter alia*, beta-alanine under the trademark CarnoSyn®.

## JURISDICTION AND VENUE

4.      This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.,* the Sherman Act Antitrust Laws of the United States, 15 U.S.C. § 2, and for the unfair competition claim, concurrent supplemental subject matter jurisdiction, 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over NAI because NAI has sought to enforce the '381 Patent and '422 Patent in this Court.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because NAI is subject to personal jurisdiction in this Court.

## FACTUAL BACKGROUND

**A.      NAI's 2009 Delaware Action**

7.      On August 20, 2009, NAI filed a Complaint in the U.S. District Court for the District of Delaware against DNP International Co., Inc. ("DNP") and Vital Pharmaceuticals, Inc. ("VPX"), alleging, *inter alia*, patent infringement. (C.A. No. 09-626-GMS, D.I. 1) ("2009 Action"). In the 2009 Action, NAI claimed to own by assignment and accused defendant DNP of infringing U.S. Patents Nos. 6,426,361 ("'361 Patent"), 6,172,098 ("'098 Patent") and 5,965,596 ("'596 Patent") (collectively "Earlier Patents"), because, *inter alia*, DNP allegedly supplied beta-alanine to nutritional supplement manufacturers and allegedly "makes, imports, offers for sale, and sells products that contribute to and induce others to infringe."

8.      On January 6, 2011, NAI, Messrs. Roger Harris, Mark Dunnett, and Kenneth Johannsson, who are named as inventors in the Earlier Patents, filed a First Amended Complaint against DNP and VPX, containing the same claims of patent infringement (C.A. No. 09-626-GMS, D.I. 53).

9.      On January 24, 2011, DNP filed a motion to dismiss NAI's First Amended Complaint (C.A. No. 09-626-GMS, D.I. 57).

10.      The 2009 Action proceeded to a Markman Hearing on May 15, 2011.  On May 31, 2011, the Delaware Court, Chief Judge Gregory M. Sleet presiding, issued an Order Construing the Terms of the Earlier Patents ("Markman Order").  The Delaware Court construed the term "beta-alanine" as it appears in the Earlier Patents, to mean:

> …beta alanine in the form of the individual amino acid, or as a component of a dipeptide, and oligopeptide, or a polypeptide, or an active derivative thereof.

NAI's attorneys admitted at the Markman Hearing that if this Court construed the claims in this way, the claims were invalid because they were anticipated by Setra, a prior art reference.  This Court also ruled that the preamble claim term "dietary supplement" is not a claim limitation, stating in part that this term only states a "purpose or intended use" for the [composition of] the invention.

11.      On June 22, 2011, the Delaware Court issued an Order which, *inter alia*, granted motions of DNP, VPX and NAI to dismiss all claims without prejudice, giving the parties leave to re-file amended pleadings within fourteen days (C.A. No. 09-626-GMS, D.I. 127).  NAI did not re-file any claims of patent infringement against DNP in the 2009 Action.

**B.      The '381 Patent and '422 Patent Prosecution History and Their Invalidity and Unenforceability**

       **1.      The '381 Patent and '422 Patent Sought**

**to Avoid The Delaware Court's Markman Order**

12.      The '381 Patent was filed on August 22, 2011 as Application Ser. No. 13/215,073 ("'073 Application").  A copy of the '381 Patent is attached as Exhibit 1.

13.      The '381 Patent, on its face, is the seventh patent to issue in a series of purportedly related patent applications ("Purported Priority Applications and Patents") dating back to 1997 and claims priority through the Purported Priority Applications to 1997.

14.      The '422 Patent was filed on August 10, 2010 as Application Ser. No. 12/806,356 ("'356 Application").  A copy of the '422 Patent is attached as Exhibit 2.

15.      The '422 Patent, on its face, is the eighth patent to issue in the series Purported Priority Applications and Patents dating back to 1997 and claims priority through the Purported Priority Applications to 1997.

16.      Upon information and belief, NAI presented claims in the '073 Application and the '356 Application in an attempt to avoid the construction of the term "beta-alanine" by the Delaware Court in the Markman Order and thereby escape the novelty-destroying Setra prior art reference.  The claims presented recited that the claimed beta-alanine was "…not part of a dipeptide, polypeptide or oligopeptide …".

17.      In a First Preliminary Amendment in the '073 Application filed on August 22, 2011, NAI admitted that:

> Despite the disclosure in the specification that beta-alanine can be
> a component of a dipeptide, oligopeptide, or polypeptide,
> applicants hereby clearly disavow any claim scope in the instant
> claims that encompasses beta-alanine as a component of a
> dipeptide, oligopeptide, or polypeptide (page 5, lines 2-5);

that the claims encompass

> …human dietary supplements [which] the applicants mean an
> addition to the human diet in a pill, capsule, tablet, powder, or
> liquid form, which is not a natural or conventional food, and which
> effectively increases the function of tissues when consumed. . .
> (page 5, lines 6-9);

and that

> These claims also ensure that the claimed subject matter is not
> encompassed by any alleged prior art and/or arguments set forth in
> . . . [listing response to Interrogatories in the 2009 Action]
> Specifically, the claims do not encompass beta-alanine as a
> component of a dipeptide, oligopeptide, or polypeptide, as
> disclosed by the Setra reference. . . (page 5, lines 13-18).

Similar language to the above three quotations appears in an Amendment filed October 11, 2011 in the '356 Application (page 6, lines 1-4, 6-8 and 12-17).

## 2.    NAI Misled the Examiner About the Prior Art

18.    NAI filed an Information Disclosure Statement in the '073 Application listing 118 references.  Among these 118 references was U.S. Patent No. 5,976,559 to De Lacharriere ("De Lacharriere '559 Patent").  NAI did not disclose to the USPTO the relevancy of the De Lacharriere '559 Patent to claim 1 of the '073 Application, despite the fact that the Examiner had cited and relied upon the De Lacharriere '559 Patent in the final rejection of a similar claim in an earlier Purported Priority Application, Application Ser. No. 09/757,782 which issued as U.S. Patent No. 6,426,361, ten years earlier.

19.    Claim 1 presented for examination in the '073 Application was substantially the same as claim 45 presented for examination in Application Ser. No. 09/757,782.

20. During examination of the '782 Application, the USPTO issued a Final Office Action on August 15, 2001 rejecting claim 45 as not novel and thus failing to comply with 35 U.S.C. § 102(e) in view of the De Lacharriere '559 Patent.

21. In response to the Office Action of August 15, 2001 in the '782 Application, and in the face of a final rejection of claim 45, NAI cancelled claim 45, without disputing the USPTO's ruling that claim 45 was not novel over the De Lacharriere '559 Patent.

22. The De Lacharriere '559 Patent is prior art to the claims of the '073 Application under 35 U.S.C. § 102(e). It discloses beta-alanine in the form of a single amino acid which is not a dipeptide, oligopeptide or polypeptide, as recited in claim 1 of the '073 Application.

23. NAI, in its Preliminary Amendment in the '073 Application, characterized the pending claims as being directed to a "human dietary supplement," stating:

> To be clear, the term "human dietary supplement" as claimed,
> does not encompass, and does not mean, a natural or conventional
> food, such as chicken or chicken broth, for example. (page 5, lines 10-12)

24. While NAI had listed the Markman Order among the 118 references it identified in the Information Disclosure Statement, NAI did not specifically point out to the Examiner in the '073 Application, in the Information Disclosure Statement, in the Preliminary Amendment or elsewhere, the ruling of the Delaware Court in the Markman Order that the preamble term "dietary supplement" merely recited an "intended use" of the composition and was not a claim limitation.

25. The Examiner issued a Notice of Allowance and his "Reasons for Allowance" on October 17, 2011. The "Reasons for Allowance" state:

> This application contains claims directed to beta-alanine
> compositions, which is not part of a dipeptide, polypeptide or
> oligopeptide and is in the form of a dietary supplement.

26.     NAI's failure to disclose in the '073 Application the relevancy of the De Lacharriere '559 Patent to claim 1 evidences its intent to deceive the USPTO and the Examiner.

27.     The '381 Patent would not have been allowed and issued if NAI had disclosed to the USPTO and Examiner the rejection of claim 45 ten years earlier in the '782 Application based on the De Lacharriere '559 Patent, and, the relevance of De Lacharriere '559 Patent to claim 1 of the '073 Application.

28.     NAI's failure to disclose in the '073 Application that the term "dietary supplement" was not a claim limitation according to the Delaware Court's ruling in the Markman Order evidences its specific intent to deceive the USPTO and Examiner.

29.     When the preamble of claim 1 is properly ignored because it is not a claim limitation, the claim merely recites beta-alanine in the form of a single amino acid, which is a common and naturally-occurring amino acid and disclosed in many prior art references, including the De Lacharriere '559 Patent.

30.     The '381 Patent would not have been allowed and issued if NAI had disclosed to the USPTO and Examiner that the term "dietary supplement" had already been found by the Delaware Court to not comprise a claim limitation, because single amino acid beta-alanine is naturally occurring and is disclosed in many prior art references, including the De Lacharriere '559 Patent.

31.     But for NAI's failure to disclose the relevance of the De Lacharriere '559 Patent, and the prior ruling of the Delaware Court that the term "dietary supplement" was not a claim limitation and therefore had no patentable weight, the Examiner would not have allowed and issued the '381 Patent. NAI's failure to disclose this highly relevant information constitutes inequitable conduct, rendering the '381 Patent unenforceable.

### 3. NAI Falsely Claimed Priority to Early Patent Applications

32.     The '073 and '356 Applications claim priority to the Purported Priority Applications and Patents dating back to 1997.  In particular, through Application Ser. No. 12/806,356 filed August 10, 2010 and Application Ser. No. 12/231,240 filed August 29, 2008, the '381 Patent and '422 Patent purport to claim priority under 35 U.S.C. § 120 back to Application Ser. No. 10/717,217 filed November 18, 2003 ("'217 Application"), and, through that latter Application, purport to claim priority back to the first Purported Priority Application, whose filing date is August 12, 1997.

33.     The '217 Application has a single claim of priority, namely to Provisional Application Ser. No. 60/462,238 filed April 10, 2003.

34.     A Preliminary Amendment dated March 22, 2004 in the '217 Application sets forth a claim to priority under 35 U.S.C. § 120 back to the first Purported Priority Application, Ser. No. 08/909,513 filed August 12, 1997, ("'513 Application") which issued on October 12, 1999, as U.S. Patent No. 5,965,596 ("'596 Patent").

35.     In a subsequent Amendment filed September 2, 2008 in the '217 Application, the list of prior applications relied upon for priority under 35 U.S.C. § 120 was deleted.  The claimed priority was thereby limited to Provisional Application Ser. No. 60/462,238 filed April 10, 2003.

36.     As a result of this express action by NAI disclaiming the earlier asserted priority, any and all applications with a filing date earlier than April 10, 2003, including the '513 Application which issued as the '596 Patent, were excluded from the claim for priority for the '217 Application.

37.      The deletion of the priority claim by NAI in the Amendment filed September 2, 2003 was deliberate.

38.     The deletion of the priority claim by NAI in the Amendment filed September 2, 2008 was required under 35 U.S.C. § 120 because none of the claims pending as of September 2, 2008 in the '217 Application were disclosed, within the meaning of 35 U.S.C. § 112, first paragraph, in the '513 Application, or in any of the Purported Priority Applications filed before April 10, 2003.

39.     The deletion of the claim to priority of the earlier patent applications, including the '513 Application, which issued as the '596 Patent, is shown on the attached Exhibit 3 which depicts a timeline of the pendency of the Purported Priority Applications and Patents.

40.     The only path in the chain of co-pending applications from the '073 Application for the subject '381 Patent, and from the '356 Application for the subject '422 Patent, back to the '513 Application, which issued as the '596 Patent, is through the '217 Application.

41.     Because the earliest priority date to which the '217 Application is entitled is April 10, 2003 (from Provisional Application Ser. No. 60/462,238), the earliest priority date to which the '381 Patent and '422 Patent are entitled is no earlier than April 10, 2003.

42.     Exhibit 3 reflects this by showing a "Priority Break" between the '217 Application and all of the earlier non-provisional applications.

43.     Because the earliest effective filing date for the '381 Patent and '422 Patent is April 10, 2003, any printed publication disclosing the invention claimed in the '381 Patent and '422 Patent before April 10, 2002 is prior art rendering the '381 Patent and '422 Patent invalid under 35 U.S.C. § 102(b).

44.     The '596 Patent is prior art to the '381 Patent and '422 Patent under 35 U.S.C. § 102(b).  U.S. Patent No. 6,172,098 issued January 9, 2001 on the second Purported Priority

Application is also prior art to the '381 Patent and '422 Patent, and has a specification common to that of the '596 Patent.

45. The '596 Patent discloses all of the subject matter claimed in every claim of the '381 Patent and '422 Patent. Claim 1 of the '381 Patent claims a composition containing the amino acid, beta-alanine, that is not part of a dipeptide, polypeptide or oligopeptide. The '596 Patent, which is prior art to the '381 Patent, discloses a composition of an amino acid, beta-alanine, that is not part of a dipeptide, polypeptide or oligopeptide, in at least col. 2, lines 30-35; col. 11, lines 40-52; and col. 12, lines 46-50 of its specification. Claim 12 of the '422 Patent claims a method of avoiding or delaying onset of muscular fatigue in a subject by providing an amino acid, beta-alanine, that is not part of a dipeptide, polypeptide or oligopeptide, which is also disclosed in the '596 Patent.

46. The preamble term "human dietary supplement" in claim 1 of the '381 Patent states a purpose or intended use of the composition claimed. Because the term states a purpose or intended use of the composition claimed, and, because the Delaware Court's Markman Order ruled that the term "dietary supplement" in the claims of the Earlier Patents was not a claim limitation, the preamble term "human dietary supplement" is not a limitation of claim 1 of the '381 Patent.

47. Although the preamble term "human dietary supplement" is not a claim limitation, and thus need not be disclosed in the prior art to render the claim invalid, nonetheless, the '596 Patent discloses in Example 2 that the beta-alanine, as disclosed at col. 2, lines 30-35, can be used as a "human dietary supplement."

48.     Upon filing the '073 Application, and upon filing the '356 Application, NAI represented to the USPTO and the Examiner that the '073 Application and '356 Application were entitled to the priority of the '513 Application.

49.     However, because NAI expressly disclaimed priority back to '513 Application and all other applications filed before April 10, 2003, NAI knew that it was not entitled to claim priority back to August 12, 1997, and, NAI knew that the earliest priority date to which it was entitled in the '073 Application and '356 Application was no earlier than April 10, 2003.  NAI nonetheless knowingly and willingly asserted a false priority claim in the '073 Application which issued into the '381 Patent, and asserted a false priority claim in the '356 Application which issued into the '422 Patent.

50.     NAI's attempt to claim a priority to which it was not entitled was an intentional and material false representation to the USPTO.  The USPTO relied on NAI's representation and as a result erroneously issued the '381 Patent and the '422 Patent.  If NAI had not misrepresented its priority date, but instead correctly represented that the earliest priority to which it was entitled was no earlier than April 10, 2003, the '381 Patent and the '422 Patent would not have issued.

51.     NAI's misrepresentation of its priority date in the '073 Application and the '356 Application to the USPTO and Examiner was done knowingly and willingly, and constituted inequitable conduct, rendering the '381 Patent and the '422 Patent unenforceable.

**C.     NAI's Threats and Actions to Enforce the '381 Patent and '422 Patent**

52.     Since November 29, 2011, the issue date of the '381 Patent, on information and belief, NAI has accused companies in the dietary supplement industry who have refused to purchase beta-alanine from NAI's distributor Compound Solutions, Inc. ("CSI"), and from whom NAI receives royalty payments, of infringing the '381 Patent.

53.     On December 6, 2011, after unsuccessful attempts by NAI to negotiate a contract with Woodbolt for the sale/purchase of beta-alanine, NAI, through its attorneys, sent a letter to Mr. Doss Cunningham, CEO of Woodbolt, demanding that Woodbolt " … immediately cease and desist from making, using, selling, offering for sale and importing its advertised beta-alanine that falls within the scope of one or more of the claims of the '381 patent."  Attached to the e-mail and letter was a draft Complaint for patent infringement which NAI said they would file at 4:00 P.M. EST on Friday December 9, 2011 in this Court unless Woodbolt either agreed to NAI's license terms requiring purchase from CSI at a premium price, or, agreed to stop selling beta-alanine by that date and time.

54.     Telephone discussions between representatives of Woodbolt and NAI on Wednesday December 14, 2011 and on Monday December 19, 2011, in which a resolution to the threat of a patent infringement action was sought by Woodbolt were unsuccessful, because Woodbolt refused to agree to buy all its requirements of beta-alanine from CSI at the premium price demanded by NAI.

55.     NAI has asserted its rights under the '381 Patent based on Woodbolt's purchase of beta-alanine from sources other than CSI and sale of products containing such beta-alanine. Thus, a substantial controversy exists between NAI, on the one hand and Woodbolt on the other hand, as to whether Woodbolt's sale of products containing beta-alanine is an infringement of the '381 Patent.  A judicial declaration is necessary and appropriate so that Woodbolt may ascertain its rights with respect to the '381 Patent.

56.     Woodbolt's products have not infringed and do not infringe, either directly or indirectly, any valid and enforceable claim of the '381 Patent either literally or under the doctrine of equivalents.  A substantial controversy exists between the parties as to whether Woodbolt

infringes the '381 Patent, which controversy is of sufficient immediacy and reality to warrant declaratory relief.

57.    NAI has threatened legal action against Woodbolt under its '381 Patent because Woodbolt did not agree to purchase beta-alanine from CSI at a premium price above the prevailing market price at which Woodbolt and others could purchase beta-alanine.

58.    On information and belief, NAI has threatened legal action and/or actually commenced patent infringement lawsuits against others under the '381 Patent.

59.    On December 21, 2011, Woodbolt filed a Declaratory Judgment Action in the U.S. District Court for the District of Delaware seeking a declaration of invalidity, non-infringement and unenforceability of the '381 Patent.   Susequently, NAI filed the present patent infringement action on the '381 Patent against Woodbolt and its contract manufacturers F.H.G. Corporation ("FHG") and Vitaquest International, Inc. ("Vitaquest") in this Court on December 21, 2011 ("First Texas Action").  After Woodbolt filed a Motion to Dismiss or Transfer that First Texas Action in favor of Woodbolt's earlier filed action in Delaware, this Court in the First Texas Action issued a stay on January 30, 2012, pending resolution by the Delaware Court of NAI's motion to dismiss, transfer of stay the Delaware first-filed action in view of NAI's later filed First Texas Action.

60.    DNP filed a Declaratory Judgment action in the U.S. District Court for the District of Delaware on December 22, 2011 seeking a declaratory judgment of invalidity, non-infringement and unenforceability of the three NAI Earlier Patents.  On January 27, 2012, DNP filed an Amended Complaint to include the '381 Patent.  On February 6, 2012, NAI filed an Answer to the Amended Complaint with a counterclaim against DNP for patent infringement of the '381 Patent.

61.     On January 20, 2012, NAI filed a patent infringement action in this Court against Image Sports, LLC for infringement of the '381 Patent.

62.     On January 20, 2012, NAI filed a patent infringement action in this Court against BPI Sports Holdings, LLC for infringement of the '381 Patent.  This Court issued a stay of that action on January 30, 2012, pending the ruling of this Court on NAI's pending motion to dismiss, transfer or stay in this action.

63.     On January 30, 2012, Image Sports, LLC and BPI Sports Holdings, LLC filed a declaratory judgment action against NAI in the U.S. District Court for the Southern District of Florida seeking a declaration of invalidity, noninfringement and unenforceability of the '381 Patent.

64.     NAI's threats of patent infringement and suits against Woodbolt and others were made in bad faith, and objectively baseless, with the knowledge by NAI that the '381 Patent was invalid and unenforceable due to NAI's inequitable conduct.  When making these threats, and when filing the above-mentioned lawsuits, NAI knew it had no reasonable and realistic expectation of success on the merits in any patent infringement action due to the invalidity and unenforceability of the '381 Patent.

65.     NAI's First Texas Action in this Court, which included a Motion for Preliminary Injunction, was a concealed and improper attempt to interfere with the business relations of Woodbolt through the use of the courts.  NAI used the First Texas Action as an anti-competitive weapon. The Preliminary Injunction Motion, on which NAI bore the burden of proof, alleged that NAI would suffer "irreparable harm" because its alleged injury would not be compensable by money damages, even though NAI was freely offering non-exclusive, royalty-bearing licenses through CSI to Woodbolt and Woodbolt's customers, as well as to Woodbolt's contract

manufacturers FHG and Vitaquest, and other parties requesting them.  The existence of available licenses proves that potential monetary damages were easily quantifiable and calculable, and the absence of irreparable harm. This fact alone would defeat NAI's claim of irreparable harm.  The Preliminary Injunction Motion manifested NAI's intent to abuse the judicial process in an attempt to coerce Woodbolt to pay a premium price to purchase beta-alanine from CSI.

66.     NAI's threats of patent infringement and/or its patent infringement claims and counterclaims in the above-mentioned lawsuits on the '381 Patent against Woodbolt, FHG, Vitaquest, DNP, BPI Sports Holdings, LLC and Image Sports, LLC constitute a pattern of objectively baseless threats and lawsuits instituted in bad faith, all with the knowledge that the '381 Patent was invalid and unenforceable due to NAI's inequitable conduct.  In all these threats and actions, NAI had no reasonable and realistic expectation of success on the merits.

67.     NAI filed a patent infringement action on the '422 Patent against Woodbolt in this Court on May 3, 2012 ("Second Texas Action").  NAI's Second Texas Action in this Court, which included a Motion for Preliminary Injunction, was yet another concealed and improper attempt to interfere with the business relations of Woodbolt through the use of the courts.  NAI used the Second Texas Action as an anti-competitive weapon.  The Preliminary Injunction Motion, on which NAI bore the burden of proof, alleged that NAI would suffer "irreparable harm" because its alleged injury would not be compensable by money damages, even though NAI was freely offering non-exclusive royalty bearing licenses through CSI to Woodbolt and Woodbolt's customers, as well as to Woodbolt's contract manufacturers FHG and Vitaquest, and other parties requesting them.  The existence of available licenses proves that potential monetary damages were easily quantifiable and calculable, and the absence of irreparable harm.  This fact alone would defeat NAI's claim of irreparable harm.  The Preliminary Injunction Motion

manifested NAI's intent to abuse the judicial process in an attempt to coerce Woodbolt to pay a premium price to purchase beta-alanine from CSI.

68.     Woodbolt's products have not infringed and do not infringe, either directly or indirectly, any valid and enforceable claim of the '422 Patent either literally or under the doctrine of equivalents.  A substantial controversy exists between the parties as to whether Woodbolt infringes the '422 Patent, which controversy is of sufficient immediacy and reality to warrant declaratory relief.

## COUNT I

### DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 8,067,381

69.     Woodbolt repeats and realleges the allegations in paragraphs 1-68 as though fully set forth herein.

70.     Woodbolt has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '381 Patent, either literally or under the doctrine of equivalents.

71.     As a result of the facts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

72.     A justiciable controversy exists over whether Woodbolt infringes a valid and enforceable claim of the '381 Patent, and judicial declaration is necessary and appropriate so that Woodbolt may ascertain its rights regarding whether it infringes any valid and enforceable claim of the '381 Patent.

## COUNT II

### DECLARATION OF INVALIDITY OF U.S. PATENT NO. 8,067,381

73.     Woodbolt repeats and realleges the allegations in paragraphs 1-72 as though fully set forth herein.

74.     The '381 Patent is invalid for failure to meet the conditions of patentability as required by 35 U.S.C. §§ 100, *et seq.*, 101, 102, 103 and/or 112, and, in particular in view of the '596 Patent which is prior art under 35 U.S.C. § 102(b).

75.     A justiciable controversy exists over the validity of the '381 Patent, and a judicial declaration regarding validity is necessary and appropriate so that Woodbolt may ascertain its rights regarding whether the claims of the '381 Patent are valid.

## COUNT III

## DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 8,129,422

76.     Woodbolt repeats and realleges the allegations in paragraphs 1-75 as though fully set forth herein.

77.     Woodbolt has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '422 Patent, either literally or under the doctrine of equivalents.

78.     As a result of the facts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

79.     A justiciable controversy exists over whether Woodbolt infringes a valid and enforceable claim of the '422 Patent, and judicial declaration is necessary and appropriate so that Woodbolt may ascertain its rights regarding whether it infringes any valid and enforceable claim of the '422 Patent.

## COUNT IV

## DECLARATION OF INVALIDITY OF U.S. PATENT NO. 8,129,422

80.     Woodbolt repeats and realleges the allegations in paragraphs 1-79 as though fully set forth herein.

81.    The '422 Patent is invalid for failure to meet the conditions of patentability as required by 35 U.S.C. §§ 100, *et seq*., 101, 102, 103 and/or 112, and, in particular in view of the '596 Patent which is prior art under 35 U.S.C. § 102(b).

82.    A justiciable controversy exists over the validity of the '422 Patent, and a judicial declaration regarding validity is necessary and appropriate so that Woodbolt may ascertain its rights regarding whether the claims of the '422 Patent are valid.

**COUNT V**

**<u>DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 8,067,381</u>**

83.    Woodbolt repeats and realleges the allegations in paragraphs 1-82 as though fully set forth herein.

84.    The '381 Patent is unenforceable because of one or more material misrepresentations to or failures to disclose material information to the USPTO by NAI, with intent to deceive, in the prosecution of the '073 Application for the '381 Patent.  But for the following misrepresentations and failures to disclose, the USPTO would not have allowed the '381 Patent to issue:

(a)    NAI failing to disclose to the USPTO the relevancy of the De Lacharriere '559 Patent to claim 1 under examination in the '073 Application, in view of the Examiner having cited De Lacharriere '559 Patent as novelty-destroying in the final rejection of similar claim 45 in NAI's own prior '782 Application;

(b)    NAI failing to disclose to the Examiner in the '073 Application in the Preliminary Amendment or elsewhere the ruling of the Delaware Court in the Markman Order that the preamble term "dietary supplement" merely recited an "intended use" of the composition

and was not a claim limitation, while at the same time contending that the term "human dietary supplement" should be considered by the Examiner to be a patentable feature of the claim; and

(c)     NAI misrepresenting to the USPTO and the Examiner that the '073 Application was entitled to the priority of the '513 Application from which the '596 Patent issued, when, in fact, NAI had expressly and deliberately disclaimed priority back to the '513 Application in the '217 Application, and had thereby limited that Application's priority and the priority of its successor applications, including the '073 Application, to April 10, 2003, in full knowledge that it was not entitled to claim priority back to August 12, 1997, and that NAI's own '596 Patent would be novelty-destroying prior art under 35 U.S.C. 102(b).

85.     A justiciable controversy exists over the enforceability of the '381 Patent, and a judicial declaration regarding unenforceability is necessary and appropriate so that Woodbolt may ascertain its rights regarding whether the claims of the '381 Patent are enforceable.


COUNT VI

**DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 8,129,422**

86.     Woodbolt repeats and realleges the allegations in paragraphs 1-85 as though fully set forth herein.

87.     The '422 Patent is unenforceable because of one or more material misrepresentations to or failures to disclose material information to the USPTO by NAI, with intent to deceive, in the prosecution of the '356 Application for the '422 Patent. But for the following misrepresentation and failure to disclose, the USPTO would not have allowed the '422 Patent to issue:

(a)     NAI misrepresenting to the USPTO and the Examiner that the '356 Application was entitled to the priority of the '513 Application filed August 12, 1997 from which the '596 Patent issued, when, in fact, NAI had expressly and deliberately disclaimed priority back to the '513 Application in the '217 Application, and, had thereby limited that Application's priority and the priority of its successor applications, including the '356 Application, to April 10, 2003, in full knowledge that it was not entitled to claim priority back to August 12, 1997, and that NAI's own '596 Patent would be novelty-destroying prior art under 35 U.S.C. 102(b).

88.     A justiciable controversy exists over the enforceability of the '422 Patent, and a judicial declaration regarding unenforceability is necessary and appropriate so that Woodbolt may ascertain its rights regarding whether the claims of the '422 Patent are enforceable.

## COUNT VII

## VIOLATION OF SHERMAN ACT § 2

89.     Plaintiff repeats and realleges the allegations in paragraphs 1-88 as though fully set forth herein.

90.     For purposes of this Complaint, the relevant geographic market is the United States, and the relevant product market is beta-alanine for use in human dietary supplements.

91.     Plaintiff seeks compensatory, treble and punitive damages based on injury caused by NAI's willful violations of the Sherman Act Antitrust Laws of the United States, more specifically 15 U.S.C. § 2, which prohibits monopolization and attempted monopolization of trade and commerce.

92.     NAI has illegally attempted to secure and maintain a monopoly in the above-defined relevant market for beta-alanine by asserting its invalid and inequitably obtained '381

Patent, in making baseless threats against Woodbolt and by filing the First Texas Action in an attempt to coerce Woodbolt to purchase its beta-alanine requirements from NAI's distributor CSI at an unjustifiably high premium price, from whom NAI obtains a royalty based on the amount of beta-alanine sold.

93.     NAI has illegally attempted to secure and maintain a monopoly in the above-defined relevant market for beta-alanine by asserting its invalid and inequitably obtained '422 Patent by filing the Second Texas Action, in an attempt to coerce Woodbolt to purchase its beta-alanine requirements from NAI's distributor CSI at an unjustifiably premium price , from whom NAI receives a royalty based on the amount of beta-alanine sold.

94.     NAI's threats and assertion of the '381 and '422 Patents in the First Texas Action and Second Texas Action were objectively baseless and in bad faith because neither NAI, nor any reasonable person in NAI's position, could assert in good faith infringement of a patent known to be invalid and unenforceable.

95.     NAI's share of the above-defined relevant market is so dominant, and its power to exclude competition through wrongful acts is so formidable, that there exists a dangerous probability that NAI has already achieved and/or will achieve monopoly power in the above-defined relevant market.

96.     These acts of NAI, which constitute "sham litigation" and an anti-trust violation, have caused direct and proximate injury and damage to Woodbolt, in an amount to be determined at trial.

97.     Woodbolt is entitled to damages and to injunctive relief pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) and Section 16 of the Sherman Act (15 U.S.C. § 26).

98.     In addition to NAI's "sham litigation" antitrust violation, NAI's use of the inequitably-procured, invalid '381 Patent and '422 Patent, and its threat of action on the '381 Patent, and filing the First Texas Action on the '381 Patent and filing the Second Texas Action on the '422 Patent, in an unlawful attempt to secure and maintain a monopoly in the above-defined relevant market, constitute *Walker Process*-type fraud and an antitrust violation.

99.     During its prosecution of the '381 Patent and '422 Patent:

(a)     NAI failed to disclose relevant and material facts, and misrepresented material facts to the USPTO, such as, but not limited to, the priority claim to the '513 Application for the '596 Patent;

(b)     NAI's priority claim was false;

(c)     NAI's misrepresentation of facts and its failure to disclose material facts evidence its intention to deceive the USPTO and the Examiner, or, at least, evidence that NAI had a state of mind so reckless as to the consequences that it was the equivalent of intent (i.e., scienter);

(d)     NAI caused and induced the USPTO and Examiner to rely on the false priority claim and on a record in which other relevant and material facts were concealed, thereby inducing the USPTO and Examiner to allow and issue the '381 Patent and '422 Patent, instead of rejecting the claims as lacking novelty over NAI's own prior '596 Patent and/or the De Lacharriere '559 Patent and/or the Delaware Court's ruling that the preamble term "dietary supplement" was not a limitation of claim 1 of the '381 Patent entitled to patentable weight, and thus "human dietary supplement" was likewise not a claim limitation entitled to patentable weight; and

(e)     NAI's actions caused injury to Woodbolt by its having to investigate, respond to and defend NAI's infringement threats and patent infringement suits on the '381 Patent and '422

Patent, and to file this Declaratory Judgment action to clear the threat of the '381 Patent and '422 Patent to its business operations, in response to NAI's implicit representation that the '381 Patent and '422 Patent were valid and not procured through inequitable conduct, and purportedly worthy of a premium price for beta-alanine.

100.    These acts of NAI, which constitute *Walker Process*-type fraud and an antitrust violation, have caused direct and proximate injury and damage to Woodbolt, in an amount to be determined at trial.

101.    Woodbolt is entitled to damages and to injunctive relief pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) and Section 16 of the Sherman Act (15 U.S.C. § 26).

## COUNT VIII

### UNFAIR COMPETITION FOR ASSERTING
### U.S. PATENT NO. 8,067,381 AND U.S. PATENT NO. 8,129,422 IN BAD FAITH

102.    Woodbolt repeats and realleges the allegations in paragraphs 1-101 as though fully set forth herein.

103.    On information and belief, at all relevant times before NAI asserted that Woodbolt was infringing the '381 Patent and before Woodbolt's Delaware action and NAI's First Texas Action and Second Texas Action were filed, NAI knew, or should have known by conducting a reasonable investigation of its own patent rights, that the '381 Patent and '422 Patent were invalid in view of the '596 Patent and unenforceable due to NAI's inequitable conduct in procuring the '381 Patent and '422 Patent.

104.    NAI has persisted in demanding that Woodbolt procure beta-alanine through CSI at a premium price and in pursuing its claims of infringement against Woodbolt, requiring Woodbolt to defend itself against NAI's baseless assertion of infringement of the '381 Patent in the First Texas Action and the '422 Patent in the Second Texas Action, causing Woodbolt to

incur considerable needless expense, attorneys' fees, loss of management time and inconvenience to investigate the '381 Patent and '422 Patent, to uncover its invalidity and unenforceability, and, ultimately to file this Declaratory Judgment action, defend itself in the First Texas Action and Second Texas Action, and file these counterclaims seeking declaratory and other relief on the '381 Patent and '422 Patent, causing damages in an amount to be determined at trial.

105. Woodbolt is entitled to damages and to injunctive relief enjoining NAI from the above-described and further acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Woodbolt respectfully requests that the Court enter judgment in favor of Woodbolt granting the following relief:

A. A declaration that Woodbolt's products containing beta-alanine have not and do not infringe any valid and enforceable claim of the '381 Patent or '422 Patent;

B. A declaration that the '381 Patent and '422 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 100 *et seq.*, 101, 102, 103, and/or 112, and, in particular are invalid as lacking novelty under § 102 in view of the '596 Patent;

C. A determination that the '381 Patent and the '422 Patent are unenforceable because they were procured through NAI's inequitable conduct, i.e., NAI's intentional and knowing misrepresentations to or failure to disclose material facts to the USPTO, which constitute a willful fraud on the USPTO to obtain the '381 Patent and '422 Patent;

       D.      A preliminary and permanent injunction against NAI and its officers, agents, servants, employees, attorneys, and others in active concert or participation with them, enjoining them from asserting infringement and/or instituting and/or continuing any legal action for infringement of the '381 Patent and '422 Patent against Woodbolt or its suppliers, manufacturers, distributors or resellers of their products, and the customers or end users of their products;

       E.      A determination that NAI has committed an antitrust violation of the Sherman Act, 15 U.S.C. §2, based both on *Walker Process*-type fraud and on "sham litigation", causing damage and injury to Woodbolt in an amount to be determined at trial, which amount is to be trebled, and awarding Woodbolt such trebled damages;

       F.      A determination that NAI committed acts of unfair competition against Woodbolt, causing damage and injury to Woodbolt in an amount to be determined at trial, and awarding Woodbolt such damages;

       G.      An order declaring that this is an exceptional case and awarding Woodbolt its costs, expenses, disbursements and reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

       H.      Such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

In accordance with Rule 38 of the Federal Rules of Civil Procedure Woodbolt respectfully demands a jury trial of all issues triable to a jury in this action.

OF COUNSEL:

Peter J. Phillips (pro hac vice pending)
Barry Evans (pro hac vice pending)
Lindsay S. Adams
Lucas & Mercanti, LLP
475 Park Avenue South, 15th Floor
New York, NY 10016
(212) 661-8000
pphillips@lmiplaw.com
bevans@lmiplaw.com
ladams@lmiplaw.com

Dated: July 27, 2012

By:      /s/ Jayme Partridge
Jayme Partridge
Texas Bar No. 17132060
Paul Dyson
Texas Bar No. 24059704
FULBRIGHT & Jaworski, L.L.P.
1301 McKinney, Suite 5100
Houston, TX. 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
*jpartridge@fulbright.com*
*pdyson@fulbright.com*

*Attorneys for Defendant Woodbolt
Distribution, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and complete copy of the *Answer and Counterclaims* was filed by

ECF using this Court's filing system, which thereby constitutes service on all parties, on July 27,

2012.

Caroline Cook Maxwell
PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, TX 75201
(214) 758-1500

*Attorneys for Defendant Natural Alternatives
International, Inc.*

Kevin M. Bell
Scott A.M. Chambers, Ph.D.
Lacy Kolo, Ph.D.
Patton Boggs LLP
8484 Westpark Drive, Ninth Floor
McLean, VA 22102
(703) 744-8000
kbell@pattonboggs.com
schambers@pattonboggs.com
lkolo@pattonboggs.com

Glenn A. Ballard, Jr.
BRACEWELL & GUILIANI
South Tower Pennzoil Place
711 Louisiana, Suite 2300
(713) 223-2300
(713) 221-1212 (fax)

Richard J. Oparil
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
roparil@pattonboggs.com

_____