IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Houston Division

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> WOODBOLT DISTRIBUTION, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 11-4511(LNH) |

**REPLY MEMORANDUM IN SUPPORT OF NAI'S
MOTION TO DISMISS WOODBOLT'S ANTITRUST AND
UNFAIR COMPETITION COUNTERCLAIMS ON THE '865 PATENT**

Plaintiff, Natural Alternatives International, Inc. ("NAI"), submits this reply in further support of its motion dismissing the antitrust and unfair competition counterclaims by defendant, Woodbolt Distribution, LLC ("Woodbolt"), in connection with NAI's compulsory counterclaim that Woodbolt infringes claims of the newly-issued U.S. Patent No. 8,470,865 ("the '865 patent").

**SUMMARY OF ARGUMENT**

NAI's motion to dismiss identified facts from the U.S. Patent and Trademark Office ("USPTO") files that Woodbolt failed to plead and that result in its failure to state a claim on its antitrust and unfair competition counterclaims. Woodbolt did not contest NAI's request that the Court take judicial notice of those documents.[1] On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a Court should not accept as true allegations that contradict facts that may be judicially noticed by

---
[1] Dkt Nos. 53-3, 100, 140-7, 154-1, 156 Exs. 1-6.

the court.[2] The undisputable USPTO record contravenes Woodbolt's attempt to plead a plausible claim.

Woodbolt's Sherman Act § 2 monopolization counterclaim requires pleading facts that support an allegation that the defendant has monopoly power in the relevant market, which the Supreme Court defines as the power to control prices or exclude competition. A patent does not of itself confer market power or a presumption thereof for purposes of the antitrust laws. Woodbolt's opposition ignores 35 U.S.C. § 271(d), which provides that: "No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having … sought to enforce his patent rights against infringement or contributory infringement

---

[2] *See, e.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (accord); *Kaempe v. Myers*, 367 F. 3d 958, 963 (D.C. Cir. 2004) (court need not accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice); *Lovelace v. Software Spectrum Inc.*, 78 F. 3d 1015, 1018 (5th Cir. 1996) (a District Court deciding a motion to dismiss a securities fraud action may take judicial notice of the contents of documents filed with the SEC); *Schroeder v. Diamond Parking, Inc.*, 2013 U.S. Dist. LEXIS 135308, *8 (D. Haw. Sept. 17, 2013) ("The Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint."); *Parry v. Westmoreland County*, 2011 U.S. Dist. LEXIS 46502, *6 (W.D. Pa. Mar. 31, 2011) (under the Rule 12(b)(6) standard, a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit); *In re Citigroup Inc. Shareholder Derivative Litig.*, 788 F. Supp. 2d 211, 213 (S.D.N.Y. 2011) (while a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor, that acceptance need not extend to allegations contradicted by documents deemed to be part of the complaint or amenable to judicial notice); *Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 684 F. Supp. 2d 1231, 1236 (D. Or. 2010) (accord); *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 95 (E.D. Cal. 2010) (a court properly may take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss; acourt need not accept as true allegations that contradict matters properly subject to judicial notice); *Bopp v. Wells Fargo Bank, N.A.*, 740 F. Supp. 2d 12, 14 (D.D.C. 2010) (a court need not accept as true the complaint's factual allegations insofar as they contradict matters subject to judicial notice.); *McMahon v. Synthron, Inc.*, 2005 U.S. Dist. LEXIS 3968, *4 (W.D.N.C. Dec. 16, 2005) (a court cannot accept as true allegations that contradict matters properly subject to judicial notice or by exhibit).

… unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned." A conclusory pleading that lacks factual allegations as to the existence of monopoly power, such as Woodbolt's, should be dismissed.

NAI's patent infringement compulsory counterclaim is presumptively immunized from antitrust liability. In light of the USPTO record, Woodbolt did not allege sufficient facts to "nudge [its] claims across the line from conceivable to plausible"[3], such that this lawsuit falls within the narrow "sham litigation" exception to *Noerr-Pennington* immunity. Based on Woodbolt's pleadings and the documents from the USPTO for which the Court can take judicial notice, this Court should find that NAI's compulsory counterclaim of infringement of the '865 patent was filed with probable cause and is not objectively baseless. Woodbolt's priority, prior art and double patenting allegations are not supported by the actual documentary history in the USPTO. Based on the documents, NAI, as a reasonable litigant, could – and does – reasonably expect a favorable outcome on its infringement counterclaim. Woodbolt's counterclaim fails to allege facts sufficient to state a plausible claim for antitrust liability. "As T.H. Huxley said, 'There is nothing like a sordid fact to slay a beautiful theory." Lynn N. Hughes, *Clearing the Fog of Words*, Admiralty and Maritime Law Institute, University of Texas (Sept. 26, 2003).

Nor does Woodbolt's counterclaim state a plausible counterclaim for *Walker Process* fraud on the USPTO. Woodbolt's own counterclaim allegations, together with the USPTO documents, shows that NAI disclosed to the Examiner for the '865 patent both the priority and prior art issues. Woodbolt **itself** disclosed the priority argument to the Examiner in a Pre-Issuance Submission filed with the USPTO. As for double patenting, Woodbolt concedes that

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007)

Examiner Henley also issued NAI's '422 patent and was familiar with NAI's patent estate. Indeed, Henley himself raised a double patenting issue with other patents in NAI's portfolio, which NAI cured by filing the proper terminal disclaimer. He then allowed the '865 patent to issue. Not only does this show that Henley was attuned to double patenting, it also negates Woodbolt's baseless contention that the Examiner simply rubber stamped NAI's applications. Woodbolt does not, and cannot, allege that NAI did anything to mislead Henley.

Thus, Woodbolt's counterclaims can and should be disposed of at the pleading stage, without expensive and unnecessary discovery. As the Court wrote in *Asahi Glass Co., Ltd. v. Pentech Pharmaceuticals, Inc.*, 298 F. Supp. 2d 986, 995 (N.D. Ill. 2003), a case repeatedly cited by Woodbolt, "to avoid turning every patent case into an antitrust case, some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase."[4]

## ARGUMENT

**I.   WOODBOLT'S ANTITRUST COUNTERCLAIM DID NOT ALLEGE ANY FACTS SUGGESTING THAT NAI HAS MONOPOLY POWER IN THE ALLEGEDLY RELEVANT MARKET.**

Woodbolt did not even try to rebut NAI's argument that a Sherman Act § 2 monopolization claim requires pleading facts that support an allegation that the defendant has monopoly power in the relevant market. *See, e.g.*, *United States v. Grinnell Corp.*, 384 U.S. 563, 570 (1966); *Crossword Magazine, Inc. v. Times Books*, 1997 U.S. Dist. LEXIS 21606, *6 (E.D.N.Y. May 13, 1997). The term "monopoly power" means "the power to control prices or exclude competition." *Grinnell Corp.*, 384 U.S. at 571. Significantly, a "patent does not of itself

---

[4] Woodbolt's opposition to the motion to dismiss did not contain any arguments specifically directed at its unfair competition counterclaim. It did not dispute that the *Noerr-Pennington* doctrine applies to actions brought under state law, including unfair competition. NAI has nothing to reply to.

confer market power or a presumption thereof for purposes of the antitrust laws." *MedImmune, Inc. v. Genentech, Inc.*, 427 F. 3d 958, 966 (Fed. Cir. 2005) (citing cases), *rev'd on other grounds*, 549 U.S. 118 (2007). A conclusory pleading that lacks factual allegations as to the existence of monopoly power should be dismissed. *See, e.g.*, *Crossword Magazine, Inc. v. Times Books*, 1997 U.S. Dist. LEXIS 21606, *7-8 (E.D.N.Y. May 13, 1997) ("Plaintiffs nowhere set forth any facts as to [defendant's] market share, and have pleaded no facts indicating that [defendant] has the power to fix prices or exclude competition in the alleged relevant market."); *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 838 (S.D.N.Y. 1988) (accord).

Instead of pleading facts suggesting that NAI has monopoly power in the beta-alanine market, Woodbolt alleges, in the most conclusory fashion, that: "NAI's share of the above-defined relevant market is so dominant, and its power to exclude competition through wrongful acts is so formidable, that there exists a dangerous probability that NAI has already achieved and/or will achieve monopoly power in the above-defined relevant market." (Dkt. No. 149, Counterclaim ¶ 10). Woodbolt cited three cases for the position that a claim can be based on conclusory or vague allegations.[5] All three of those cases, however, are from the Seventh Circuit and not binding. Nor should they be considered persuasive because they were all decided before the Supreme Court's decisions in *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbel*, 556 U.S. 662 (2009). Under those decisions, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements . . . are not entitled to the assumption of truth. While legal conclusions can provide

---

[5]*Muick v. Glenayre Elecs.*, 280 F.3d 741 (7th Cir. 2002); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Walker v. Thompson*, 288 F.3d 1005, 1008 (7th Cir. 2002).

the complaint's framework, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1940; *see also Gearlds v. Entergy Servs.*, 709 F.3d 448, 450 (5th Cir. 2013) (complaint must allege more than conclusions).

Woodbolt erroneously asks this Court to rely on the Supreme Court decision in *Erickson v. Pardus*, 551 U.S. 89 (2007). (Dkt. No. 161 at 5). It failed, however, to inform the Court that *Erickson* was decided prior to the 2009 *Iqbal* decision, which held that a plaintiff must allege facts to demonstrate that the allegations of its complaint are plausible. Moreover, *Erickson* involved pleading standards for a *pro se* plaintiff. That is not this case. *See Cohen v. Valentin*, 2011 U.S. Dist. LEXIS 130300, *4-7 (*Erickson* was a pre-*Iqbal* decision limited to *pro se* cases). Woodbolt's counterclaim simply does not meet the *Twombly* and *Iqbal* requirement to plead facts and not mere conclusions.

Without pleading any facts plausibly showing that NAI has monopoly power in the market for beta-alanine – the power to control prices or exclude competition – the antitrust counterclaim should be dismissed.

## II.   NAI'S COMPULSORY COUNTERCLAIM FOR INFRINGEMENT OF THE '865 PATENT IS PROTECTED BY THE *NOERR-PENNINGTON* DOCTRINE AND THE SHAM LITIGATION EXCEPTION DOES NOT APPLY.

Woodbolt does not dispute that under the *Noerr-Pennington* doctrine filing a lawsuit is a protected activity immunized from the antitrust laws. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ("*PREI*"). As the Supreme Court has held, an antitrust plaintiff can only overcome the immunity if it shows that, among other things, that the claim is "objectively baseless", *i.e.*, "no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under

*Noerr…." PREI*, 508 U.S. at 60; *see also Bio Technology General Corp. v. Genentech, Inc.,* 267 F.3d 1325, 1333 (Fed. Cir. 2001). As the Court wrote in *Asahi Glass Co.*, the case repeatedly cited by Woodbolt:

> A firm that has received a patent from the patent office (and not by fraud, a separate issue in this case, discussed later in this opinion), and thus enjoys the presumption of validity that attaches to an issued patent, 35 U.S.C. § 282, is entitled to defend the patent's validity in court, to sue alleged infringers, and to settle with them, whatever its private doubts, unless a neutral observer would reasonably think either that the patent was almost certain to be declared invalid, or the defendants were almost certain to be found not to have infringed it, if the suit went to judgment. It is not "bad faith" to assert patent rights that one is not certain will be upheld in a suit for infringement pressed to judgment and to settle the suit to avoid risking the loss of the rights. No one can be *certain* that he will prevail in a patent suit.

298 F. Supp. 2d at 992-93 (emphasis in original, citation omitted).

Woodbolt cannot contest that the Supreme Court has held that a lawsuit is not objectively baseless if a plaintiff has "probable cause" to bring the suit, which "requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *PREI,* 508 U.S. at 62, 63.

While Woodbolt argues that it has pled facts to "support a plausible case of invalidity" based on contentions regarding priority, prior art, and double patenting (Dkt. No. 161 at 12), that is not the test. Whether or not Woodbolt believes it has a plausible case of invalidity is absolutely irrelevant on this dispositive motion. The Court must decide whether NAI, as a reasonable litigant, could reasonably expect a favorable outcome on an infringement claim. Based on Woodbolt's pleadings and the documents from the USPTO for which the Court can take judicial notice, this Court should find that NAI's compulsory counterclaim of infringement of the '865 patent was filed with probable cause and is not objectively baseless. Where "there is no dispute

over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law." *Id*. at 63.

> A. **A Reasonable Litigant Would Conclude That Woodbolt's Priority Argument Is Without Merit, Particularly When It Was Considered – And Rejected – By The Examiner Who Issued The '865 Patent.**

Woodbolt argues that NAI did not have a reasonable basis to raise its compulsory '865 patent counterclaim because of interim decisions by the USPTO reexamination unit and that NAI has purportedly not been able to cite any case law, regulation or occurrence on this issue. Woodbolt is simply wrong. NAI has repeatedly shown that Woodbolt's priority contentions lack any legal or procedural support. (*See, e.g.*, Dkt. No. 62 at 3-35; Dkt. No. 107; Dkt. No. 117; Dkt. No. 146-1 at 6-9). It is telling that Woodbolt's own opposition does not cite a single case, regulation or occurrence that supports its claim that there was a priority break that would deny the '865 patent (or the earlier '381 and '422 patents) the benefit of its claimed and vested 1996 priority date. Certainly, as discussed below, it did not even try to rebut the expert opinion of Stephen Kunin ("Kunin"), an almost 40-year USPTO veteran, who carefully reviewed the evidence and concluded that Woodbolt's priority argument is erroneous. (Dkt. No. 154-1). Woodbolt has not come forward with any expert evidence of its own to rebut Kunin.

Woodbolt's improper priority analysis imposes a retroactive effect on amendments to the priority claim in an intermediate application that would nullify a claim to the right of priority that was made and vested in an earlier filed application made at the time of its filing. In effect, Woodbolt is asking this Court to break a link in the chain of priority applications after the link in the chain was formed at the time of the filing of a later application claiming the benefit of

priority to an immediate prior application. There is nothing in 35 U.S.C. § 120, MPEP § 201.11 or any other legal authority that provides for such a *nunc pro tunc* effect.[6]

In addition to NAI's own analysis, the objective reasonableness supporting its infringement counterclaim is buttressed by the prosecution history of the '865 patent. Woodbolt falsely asserts that the priority issue was not considered by Examiner Henley, who issued the '865 patent. NAI itself filed an Information Disclosure Statement ("IDS") that included Woodbolt's requests for reexamination and the initial office actions on the '381 and '422 patents that set forth Woodbolt's priority argument and the analysis of the USPTO reexamination unit. (Dkt. No. 156-3, Cite Nos. 19-23; DJ Complaint ¶ 23). The USPTO records show that Examiner Henley considered those materials during prosecution. Woodbolt **itself** filed a Pre-Issuance Submission and IDS with the USPTO, expressly raising the priority issue that it raised in this Court. (Dkt. No. 100-3). On February 14, 2013, Henley reviewed Woodbolt's filing and initialed its IDS, showing it had been considered, a fact that the Court should judicially notice. (Ex. 1 hereto). Henley rejected Woodbolt's and the USPTO reexamination unit's arguments. Upon issuance, the '865 patent was presumed valid. *See* 35 U.S.C. § 282; *Voda v. Cordis Corp.*, 536 F.3d 1311, 1322 (Fed. Cir. 2008). This presumption can only be overcome by clear and convincing evidence of invalidity or unenforceability. *See, e.g., Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). Examiner Henley's finding that there was no priority break issue is objective evidence that NAI properly raised infringement of the '865 patent as a compulsory counterclaim here.

---

[6] Even assuming *arguendo* that the law was not settled in NAI's favor, which it is, probable cause exists because the action is "based on an objectively good faith argument for the extension, modification, or reversal of existing law." *PREI*, 508 U.S. at 65.

Woodbolt's suggestion that Henley merely "rubber stamped" the '182 application and issued the '865 patent lacks any factual or legal basis in its pleading. The USPTO documents of which the Court can take judicial notice show that Examiner Henley reviewed the relevant submissions. (Dkt. No. 156-2). Woodbolt's contention also flies in the face of the basic proposition that a government agency such as the USPTO is presumed to have done its job. *See, e.g.*, *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F. 2d 1350, 1359 (Fed. Cir. 1984), citing *Morgan v. Daniels*, 153 U.S. 120, 125 (1894). In 2011, the U.S. Supreme Court quoted that proposition with approval in *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2243 (2011). *See also Bayer AG v. Schein Pharmaceutical, Inc.*, 129 F. Supp. 2d 705, 713 (D.N.J. 2001). "[T]his presumption is even stronger when the governmental determination was made by an agency like the PTO whose examiners are presumed to have expertise in the subject matter of the patents they examine." *Bayer AG*, 129 F. Supp. 2d at 714. Thus, Examiner Henley's consideration of the priority question and the USPTO's subsequent issuance provides probable cause for NAI's infringement counterclaim.

As this Court is well aware, the papers on the '381 and '422 patents by the USPTO reexamination unit are merely interim decisions that have no force of law. (*See* Dkt. Nos. 146-1 at 3-6). More than half are reversed by the Patent Trial and Appeal Board. (*Id.*; Dkt. No. 152 ¶ 2). These interim decisions do not provide factual support for an allegation of sham litigation.

Woodbolt's opposition does nothing to rebut the declaration of patent procedure expert, Kunin, who has opined in a sworn declaration submitted to the USPTO that NAI's arguments on the priority issue are correct. (Dkt. No. 154-1). While Woodbolt tries to denigrate Kunin by referring to him as a "purported" expert, Kunin served nearly 40 years in the USPTO, including a decade as the Deputy Commissioner for Patent Examination Policy. He was a key figure in the

development of USPTO policy, practice and procedure. Since leaving the USPTO, Kunin has been retained as a patent procedure expert in numerous matters and has been qualified to testify as an expert in at least seven trials. If he is not a qualified expert, no one is.

Kunin based his opinion on his decades of experience with the provisions of the relevant statute, 35 U.S.C. § 120, the Code of Federal Regulations, and the Manual of Patent Examination Procedure ("MPEP"). He opined that the '381 patent "is compliant with 35 U.S.C. § 120, 37 C.F.R. § 1.78 and MPEP § 201.11 and is entitled to the right of priority to the filing date of U.S. Patent No. 5,965,596 and the priority dates of the two U.K. applications (1996)…." (Dkt. No. 154-1 ¶ 3). His declaration sets forth in detail the bases for his opinion. (Id. ¶¶ 18-37).

By contrast, Woodbolt has never come forward with any expert evidence supporting its position. Nor did Woodbolt cite any statute, regulation, or case that contradicted Kunin's expert analysis and opinion. Woodbolt cannot provide such evidence because Kunin properly analyzed the priority issue and concluded that there was no *nunc pro tunc* effect of the September 2, 2008 priority amendment that occurred after priority was established on August 29, 2008. With this proper analysis as proffered by Kunin, a reasonable party such as NAI would have no choice but to enforce the '865 patent through filing a compulsory counterclaim or potentially lose its right to do so because of res judicata or collateral estoppel. The Kunin declaration thus confirms that NAI had an objectively reasonable basis to file and continue to prosecute its compulsory infringement claim against Woodbolt.

Thus, NAI had probable cause to sue to enforce its intellectual property rights as a reasonable litigant that "perceived likelihood of success." *PREI*, 508 U.S. at 65.

**B.     NAI's Compulsory Counterclaim Was Not Objectively Baseless Based On Purported Prior Art.**

Woodbolt argues that NAI had notice of, but did not "discuss" with the USPTO, certain alleged prior art references during prosecution of the '865 patent. That contention is flatly contradicted by the records of the USPTO and cannot be used to deny the motion to dismiss the antitrust claims. The undisputed fact is that NAI filed two IDSs with the USPTO during prosecution on January 23, 2012 and February 4, 2013. They included the reexamination proceedings involving the '381 and '422 patents and the prior art references cited by Woodbolt in this litigation and the reexaminations (*e.g.*, Asatoor, Gardner, Bauer, EP593, De Lacharriere, Hama, Setra and Wu). These submissions fulfilled NAI's duty of disclosure. The Examiner considered all of these before allowing the '865 patent to issue. (Dkt. No. 156-3).

Contrary to Woodbolt's assertion, NAI was not required to provide written comments to the Examiner on any of the cited references. Perhaps Woodbolt is confused because the USPTO changed its procedures to remove a patent applicant's obligation to explain references listed on an IDS. Under current law, there is no such requirement. *See, e.g.*, *Furminator, Inc. v. Kim Laube & Co., Inc.*, 758 F. Supp. 2d 797 (E.D. Mo. 2010) (discussing PTO rule changes that removed applicant's obligation to provide explanation of references listed on an IDS, and finding no inequitable conduct where litigation issues were provided to USPTO); 37 C.F.R. § 1.98; MPEP § 609. As in *Furminator*, NAI was not required to provide any explanations of the items listed on the IDS. NAI took care to ensure that Examiner Henley had copies of the reexamination Orders and Office Actions, which discuss the priority issues and asserted art references relied on by Woodbolt. As noted, Examiner Henley considered these Orders and Office Actions, determined that the arguments on the prior art by Woodbolt and the USPTO reexamination unit

did not affect the patentability of the claims of the invention before him and proceeded to issue the '865 patent.

Moreover, not only were the references disclosed to the USPTO, NAI has a firm, objectively reasonable belief that they do not render the '865 patent (or any other beta-alanine patent in the family) invalid. NAI is the only party here that presented sworn testimony to the Court and the USPTO that the references cited by Woodbolt are not invalidating prior art. (*See* Dkt. No. 140 Exs. 1-6 (declarations of Drs. Margolis, Sale, Zoeller and Harris). Woodbolt has not come forward with any scientific expert declaration supporting its position on invalidity. As such, Woodbolt fails to state a claim based on the sham litigation exception.

### C.   The '865 Patent's Claim 1 Is Not The Same As The '422 Patent's Claim 12 And 19, And Therefore, There Is No Double Patenting Issue.

As was previously discussed with this Court at the July 8, 2013 hearing (Dkt. No. 157 at 20-21, 23-24), the '865 patent claims and their scope are different from those of the '422 patent. The '865 patent is limited to a method that "increases anaerobic working capacity." The '422 patent teaches a method to "avoid or delay the onset of muscular fatigue in a subject…." (Dkt. No.53-3, Claim 12). The '865 patent's claim 1 method of *increasing anaerobic working capacity* (*e.g.*, extended energy burst for a world class sprinter – 100 meter dash) is not the same scope as the '422 patents method *to avoid or delay the onset of muscular fatigue* (*e.g.*, endurance required by a person walking a mile). There is no statutory double patenting and the inventions described in the two method patents are different in both language and scope.

The USPTO has explained that an examiner can only reject claims for statutory double patenting when they are **identical**:

> In determining whether a statutory basis for a double patenting rejection exists, the question to be asked is: Is the same invention being claimed twice? 35 U.S.C. 101 prevents two patents from

028284.0115\ 4841-1620-1004.2

> issuing on the same invention. "Same invention" means **identical subject matter**.
>
> A reliable test for double patenting under 35 U.S.C. 101 is whether a claim in the application could be literally infringed without literally infringing a corresponding claim in the patent. **Is there an embodiment of the invention that falls within the scope of one claim, but not the other?** If there is such an embodiment, **then identical subject matter is not defined by both claims and statutory double patenting would not exist.** For example, the invention defined by a claim reciting a compound having a "halogen" substituent is not identical to or substantively the same as a claim reciting the same compound except having a "chlorine" substituent in place of the halogen because "halogen" is broader than "chlorine."

MPEP § 804II(A) (emphasis added, citations omitted).

Here, the scope of the claims in the '422 and '865 patents are not identical. There are clearly embodiments of the '865 patent's claim 1 that do not fall within the scope of the '422 patents claims 12 and 19. Examiner Henley recognized this and so he did not raise any statutory double patenting rejection based on the '422 patent. Woodbolt cannot allege that there is statutory double patenting of the same invention.

Woodbolt attempts to bolster their weak and misleading position by arguing that the functional limitations in the claims of the '865 patent are inherent physiological processes that naturally occur. As this Court has heard on multiple occasions and NAI has demonstrated through actual scientific evidence rather than attorney argument, there is nothing inherent about the science of the present invention or that of the '422 and '381 patents. The body does not naturally acquire the amounts necessary to achieve these very different results, nor does the body naturally utilize the amounts necessary to achieve these very different results. The body must be "tricked" over time to overcome the natural functions of the body and force the body to alter or rewire itself to accept and utilize the larger, unnatural doses of beta-alanine, so that the sprinter

or power lifter can only then increase the anaerobic working capacity for energy bursts or the elderly person wanting to walk a mile can delay the onset of fatigue to complete her walk.

With the results to be achieved being different for different purposes (increased ability for energy bursts versus avoiding fatigue, with each using a different energy system), the "thereby" clauses become relevant to the respective claimed inventions. Again, Woodbolt attempts to mislead the analysis by citing only a portion of the relevant MPEP § 2111.04, which addresses "wherein" and "whereby" clauses. In fact, Woodbolt deliberately left out the portion of MPEP that directly supports NAI's position. The MPEP § 2111.04 states: "The determination of whether each of these clauses is a limitation in a claim **depends on the specific facts** of the case. In *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329, 74 USPQ2d 1481, 1483 (Fed. Cir. 2005), the court held that when a "'whereby' clause states a condition that is **material to patentability, it cannot be ignored** in order to change the substance of the invention." (Emphasis added.) Therefore, the clauses recited in claim 12 of the '422 patent, for example, cannot be ignored as they are material to patentability and cannot be ignored. The clauses are material for the very reason that Woodbolt is misleading this Court on the issue; they demonstrate the distinctness of the two different inventions. Examiner Healy, however, a person that would be familiar with the MPEP, recognized the functional limitations that distinguish the claims and accorded them the proper consideration, *i.e.*, they are **material to patentability**.

Finally, Woodbolt admits that it cannot maintain an antitrust counterclaim based on the judicially created doctrine of non-statutory (obviousness-type) double patenting. NAI filed a term disclaimer as to the '865 patent that mooted the issue. (Dkt. No. 140-7).[7]

---

[7] Woodbolt argues that the term "disclaimer" was some kind of admission by NAI. That is blatantly incorrect. NAI expressly informed the Court that the disclaimer was filed to try to limit

- 15 -

Accordingly, Woodbolt's priority, prior art and double patenting allegations do not support any claim for violating section 2 of the Sherman Act as sham litigation. The Court can determine based on the record before it of Woodbolt's pleadings and judicially noticeable documents that NAI's filing of an infringement counterclaim was objectively reasonable and done with probable cause. NAI's motion to dismiss should be granted.

### III. WOODBOLT HAS NOT STATED A CLAIM FOR *WALKER PROCESS* FRAUD ON THE USPTO.

Woodbolt also bases its § 2 counterclaim on the allegation that NAI committed fraud on the USPTO under *Walker Process Equipment Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 1727 (1965), by misrepresenting or failing to disclose to the USPTO the alleged priority issue, prior art, and double patenting. For the same reasons discussed above, however, Woodbolt's counterclaim does not state a claim for relief.

During prosecution of the '865 patent, NAI disclosed the reexamination materials that expressly discussed the priority issue, and Examiner Henley considered those materials on February 7, 2013. (Dkt. No. 156-3, Cite Nos. 19-23). Woodbolt's pleading itself admits that NAI disclosed and provided the USPTO with copies of Woodbolt's requests for reexamination and the initial office actions on the '381 and '422 patents, which include Woodbolt's priority argument. (DJ Complaint ¶ 23). Also, Woodbolt filed a Pre-Issuance Submission with the USPTO, making the same arguments regarding priority that it made to this Court. (Dkt. No. 100-3). Thus, both NAI and Woodbolt presented the priority issue to the USPTO and Woodbolt cannot base an antitrust counterclaim on an allegation that the USPTO was defrauded.

---

the issues that the Court must consider and to moot the issue, and did so "[w]ithout the intent of acquiescing to the merits of such allegations…." (Dkt. No. 156-1 at 16).

As also discussed above, during prosecution of the '182 application that lead to the '865 patent, NAI provided Examiner Henley with an IDS that included prior art cited by both Woodbolt and the reexamination unit in connection with the '381 and '422 patents and the positions of the USPTO reexamination unit relating to that prior art. He considered that prior art and the USPTO reexamination unit's arguments on February 7, 2013. (Dkt. No. 156-3, Cite Nos. 19-24, 25, 27, 31, 32, 36, 38). Again, NAI was not required to provide written comments to the Examiner on any of the cited references, although NAI provided him the written comments from personnel in the USPTO reexamination unit. Woodbolt does not allege a plausible claim that NAI committed fraud.

Nor can Woodbolt allege fraud in connection with the alleged double patenting. Woodbolt's Pre-Issuance Submission expressly argued that the claims of the application that became the '865 patent were "substantially the same as" the claims of the '422 patent. (Dkt. No. 100, Ex. 3 at 5). Examiner Henley himself was familiar with the '422 patent because he was the person who examined and issued it. Moreover, during prosecution, NAI submitted – and the Examiner considered – an IDS with documents from Application No. 12/806,356, which became the '422 patent. (Dkt. No. 156-3, Cite Nos. 10-12). Given the disclosures by NAI and Woodbolt, any allegation of fraud on the USPTO is simply not plausible.

Accordingly, Woodbolt's counterclaim does not state a claim for *Walker Process* fraud and it should be dismissed. And based on the factual record, any attempt to file an amended counterclaim would be futile and should not be permitted.

## CONCLUSION

For all the foregoing reasons, Woodbolt's Sherman Act and unfair competition counterclaims should be dismissed.

028284.0115\ 4841-1620-1094.3

- 18 -

| | |
|---|---|
| Dated: October 20, 2013 | Submitted respectfully, |
| | /s/ Richard J. Oparil |
| Caroline Cook Maxwell | Glenn A. Ballard, Jr. |
| State Bar No. 24055341 | State Bar No. 01650200 |
| S.D. Texas Bar No. 927197 | BRACEWELL & GUILIANI |
| PATTON BOGGS LLP | South Tower Pennzoil Place |
| 2000 McKinney Avenue, Suite 1700 | 711 Louisiana, Suite 2300 |
| Dallas, TX 75201 | Houston, Texas 77002 |
| (214) 758-1500 | (713) 223-2300 |
| | (713) 221-1212 (fax) |
| | Richard J. Oparil |
| | S.D. Texas Bar No. 30422 |
| | Kevin M. Bell |
| | Scott A.M. Chambers, Ph.D. |
| | Lacy L. Kolo, Ph.D. |
| | PATTON BOGGS LLP |
| | 2550 M Street, NW |
| | Washington, DC 20037 |
| | (202) 457-6000 |
| | roparil@pattonboggs.com |
| | *Attorneys for Plaintiff* |
| | *Natural Alternatives International, Inc.* |

- 18 -

028284.0115\ 4841-1620-1994.2

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 20, 2013, a copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

                        /s/ Richard J. Oparil
                        Richard J. Oparil